## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH SINCLAIR, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4090 |
| | § | |
| JOHN E. POTTER, U.S. Postal | § | |
| Service Postmaster General, | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

This employment discrimination case is before the Court on the Motion for Summary Judgment [Doc. # 25] ("Motion") filed by Defendant John E. Potter, Postmaster General of the United States of America ("Defendant"), to which Plaintiff Joseph Sinclair ("Plaintiff") filed a Response [Doc. # 29] and Defendant filed a Reply [Doc. # 30].  Based on a careful review of the full record in this case and the governing legal authorities, the Court concludes that Defendant's Motion should be granted.

## I.    <u>FACTUAL BACKGROUND</u>

Plaintiff is a Caucasian male who was born in April 1944.  He was 59 years old when the events pertinent to his claims occurred.  He began working for the United States Postal Service ("Defendant" or "Postal Service") as a custodian at the North Houston Mail Processing Facility ("North Houston Facility") in 2000.  In 2003, Plaintiff applied for a promotion to the Maintenance Supply Clerk Level 5 position ("Level 5 Position").  Plaintiff was not promoted.  Defendant instead promoted two younger females, Iona D'Souza and

Annalie Ignacio.  D'Souza was born in June 1968 and thus was 35 years old at the time of her promotion.  Ignacio was born in May 1963 and thus was 40 years old when promoted.

Postal Service promotions are governed by a collective bargaining agreement ("CBA") between the Postal Service and the American Postal Worker's Union ("Union"). Within thirty days after a new employee or transfer employee arrives at a facility, he may apply to be placed on the promotion eligibility register ("PER") for a job in which he has an interest.   After expressing interest in a position, an applicant must complete certain paperwork, take any required tests, and participate in a job interview.  If a new employee does not express an interest in a position or otherwise complete the requirements, he must wait until "Open Season" to seek the next promotion opportunity.  Pursuant to the CBA, Open Season must be held at least once every three years.

To qualify for the PER, an employee must interview with a three-member committee. One member is the chair and coordinates the committee activities.  The second member is selected for his technical experience in the desired position.  The third member is a member of the Postal Service's Human Resources Department and ensures compliance with applicable labor laws, regulations, and presumably the CBA.  The committee members' decision on the applicant's interview score is reached by consensus after the interview.

Under the CBA, a Level 5 Position is awarded to the employee ranked as "best qualified" on the PER.   The Postal Service utilizes a clerical abilities test and the committee's interview score to ascertain the best qualified employee. The maximum score on each component is 100 points.  Therefore, the maximum composite score is 200 points.

The committee members are not told an applicant's clerical test score, if the test has been taken, at the time of the interview.

In Open Season 2003, Plaintiff applied for a Level 5 Position at the North Houston Facility. Plaintiff submitted the required paperwork and was interviewed on July 2, 2003. William Edwards, a 54 year old male, chaired the interview committee. Harrison Raipe, a 53 year old male, served as the committee's technical expert. Patsy Malone, a female, was the committee member from Human Resources. Plaintiff took the clerical abilities test on July 28, 2003. He scored a 50 on his interview and a 76 on his clerical abilities test. Plaintiff thus qualified for the PER with a composite score of 126.

In July 2003, the Postal Service transferred five female clerks to the North Houston Facility to perform custodial duties. On July 25, 2003, D'Souza and Ignacio, two of the recently transferred clerks, indicated their desire to qualify for a Level 5 Position. Each woman interviewed with the committee on November 19, 2003. Their interview committee consisted of Edwards and Raipe, two of the committee members that interviewed Plaintiff. Larry Caulfield, a male was the Human Resources member. Ignacio scored a 48.6 on her interview and an 85 on the clerical abilities test. Ignacio thus qualified for the PER with a composite score of 133.6. D'Souza scored a 58.6 on her interview and a 76 on the clerical abilities test. D'Souza thus qualified for the PER with a composite score of 134.6.

On February 4, 2004, the Postal Service posted the PER based on the applicants' composite scores. The PER ranked D'Souza first (134.6), Ignacio second (133.6), and

Plaintiff third (126).  Shortly thereafter, Defendant awarded D'Souza and Ignacio the two Level 5 Positions that were vacant at the time.

Plaintiff filed two administrative Equal Employment Opportunity ("EEO") complaints alleging that he was not promoted to one of the Level 5 Positions because of his sex and age.[1] Plaintiff filed suit against Defendant on October 21, 2004, bringing a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and a claim of sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.[2]  Specifically, Plaintiff alleges that he was denied a promotion in favor of younger, less qualified female colleagues because of his age and sex.  Other facts specific to Plaintiff's claims will be set forth fully as necessary for the analysis in this Memorandum and Order.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322

---

[1]    See Acceptance/Consolidation of EEO Formal Complaints, Exhibit 8 to Motion.  Plaintiff also alleged in his EEO complaint that he had suffered discrimination based on a disability.  He has not pursued that claim in this suit.

[2]    Plaintiff did not await the Postal Service's administrative resolution of his EEO complaints. Aggrieved federal employees may file a Title VII lawsuit if there is no agency action within 180 days after the filing of an EEO complaint.  See 42 U.S.C. § 2000e-16(c).  The timing of Plaintiff's filing this suit satisfied this requirement.

(1986);  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also*

*Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th

Cir. 2002).

In deciding a motion for summary judgment, the Court must determine whether "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with any

affidavits filed in support of the motion, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th

Cir. 2003).  An issue is material if its resolution could affect the outcome of the action.

*Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir.

2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  In deciding

whether a fact issue has been created, the facts and the inferences to be drawn from them

must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co.*

*v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual

controversies are resolved in favor of the nonmovant "only when there is an actual

controversy—that is, when both parties have submitted evidence of contradictory facts."

*Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the

absence of a material fact issue with respect to those issues on which the movant bears the

burden of proof at trial.  *Smith  v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).  The

movant meets this initial burden by showing that the "evidence in the record would not

permit the nonmovant to carry its burden of proof at trial."[3]  *Id*.  If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)).  A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*. (quoting *Brenoettsky*, 158 F.3d at 911).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence (quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994))).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*,  144 F.3d 377, 380 (5th Cir. 1998).  Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case."  *Id*.  In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

---

[3]    "When a party moves for summary judgment, . . . '[i]t is not enough for the moving party to merely make a conclusory statement that the other party has no evidence to prove his case.'"  *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 440 (5th Cir. 2000) (citing *Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir.1993)).

III.   **ANALYSIS**

Plaintiff brings claims of age discrimination under the ADEA and sex discrimination under Title VII in connection with the Postal Service's denial of his requested promotion. Defendant seeks summary judgment dismissing both of Plaintiff's claims.  In response to the Postal Service's Motion, Plaintiff challenges the promotion of D'Souza, arguing she is younger and less-qualified than he.  Plaintiff does not argue that he was more qualified than Ignacio, who received one of the Level 5 Positions. After careful consideration, the Court concludes Plaintiff has not met his summary judgment burden on either claim.

Plaintiff neither presents evidence on, nor defends in any way in his Response, Defendant's motion for dismissal of his sex discrimination claim.  This claim is therefore deemed abandoned and is dismissed with prejudice.  As a result, the sole remaining claim in dispute is Plaintiff's claim for age discrimination under the ADEA contesting D'Souza's promotion to the Level 5 Position.[4]  The Court turns to the parties' argument with respect to that claim.

A.   **ADEA Legal Standard**

The ADEA provides that "it shall be unlawful for an employer . . . [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000); *Rachid v. Jack in the Box, Inc.*,

---

[4]   Title VII and the ADEA employ the same evidentiary standards. *See Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).  Plaintiff's sex discrimination claim fails on the merits as a matter of law for the same reasons his age claim fails. *See infra.*

376 F.3d 305, 308–09 (5th Cir. 2004).  In essence, the ADEA makes it unlawful for an employee, who is at least 40 years old, to be subjected to an adverse employment action because of the employee's age.  *See Rutland v. Moore*, 54 F.3d 226, 228 (5th Cir. 1995) (citing 29 U.S.C. §§ 623(a), 631(a)).

As with other types of employment discrimination, age discrimination may be demonstrated either through direct evidence or by an indirect method of proof.  *See Rachid*, 376 F.3d at 309 (ADEA); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (Title VII); *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 896 (5th Cir. 2002) (ADEA); *see also Brown*, 207 F.3d at 781 ("The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both [Title VII and the ADEA].").  "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)."  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see Laxton*, 333 F.3d at 578; *Sandstad*, 309 F.3d at 896.

Where there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination.  *See Reeves*, 530 U.S. at 142; *Sandstad*, 309 F.3d at 896.  "'To establish a *prima facie* case, a plaintiff need only make a very minimal showing.'"  *Nichols v. Loral Vought Sys. Corp.*,

81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

If the plaintiff establishes a *prima facie* case of discrimination, the defendant must "articulate a legitimate, non-discriminatory reason for its decision." *Rachid*, 376 F.3d at 312. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *see Sandstad*, 309 F.3d at 898.

If the defendant satisfies this limited burden, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid*, 376 F.3d at 312 (internal quotations and citations omitted). If the plaintiff presents evidence that age was a motivating factor in the decision, the defendant must prove that it would have made the same decision regardless of any discriminatory motive. *Id.*

## B.     Direct Evidence Contention

Plaintiff contends that he has direct evidence that he was denied a promotion because of his age. Plaintiff relies on the following facts: Plaintiff filed a grievance under the CBA complaining of disparities in the promotion selection process. William Edwards chaired the interview committee that interviewed all of the applicants for the Level 5 Positions Plaintiff sought. Edwards also was Defendant Postal Service's representative during the grievance

procedure.  Plaintiff was represented by Lawrence Ellis.  Ellis argued that Plaintiff had pre-Postal Service work experience superior to the other applicants.  Ellis further noted that, in contrast to the other applicants, Plaintiff's work experience extended over a period of many years because he had been in the general work force for a long time.  Edwards responded to this argument with the comment, "how long ago was this experience and in what century?"[5] Edwards then expressed his opinion that the experience Plaintiff had gained so long ago was now obsolete and noted that the Maintenance Department was now computerized.[6]

Direct evidence includes "'any statement or written document showing a discriminatory motive on its face.'"  *Fierros v. Tex. Dept. of Health*, 274 F.3d 187, 195 (5th Cir. 2001) (quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 329 (5th Cir. 1994)).  For a remark to be probative of discriminatory intent, it must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the [adverse employment action]."  *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (citing *Bodenheimer v. PPG Industries Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)).  If an inference is required for the evidence to be probative on an employer's discriminatory animus, the evidence is circumstantial, not direct.  *Sanstad*, 309 F.3d at 897–98.

Statements which merely suggest discriminatory motive are not sufficient to constitute direct evidence of discrimination.  *See Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733–34 (5th

---

[5]     Declaration of Lawrence Ellis, Exhibit 3 to Response, at 1.

[6]     *See id.*

Cir. 1999) (holding that a job interviewer's statement that the plaintiff's age caused him concern was not direct evidence of discrimination in the employer's decision not to hire the plaintiff); *Tex. Instruments, Inc.*, 100 F.3d at 1181 (holding that statements to a discharged worker that it was time to "make room for the younger supervisors" did not constitute direct evidence of discrimination); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1218 (5th Cir. 1995) (holding that supervisor's statements about replacing employee with "someone younger and cheaper," that "it must [have] been your age," and that company was "going to get rid of the older employees with the higher salaries," were not direct evidence of age discrimination); *Martin v. Bayland, Inc.*, 403 F. Supp. 2d 578, 582–83 (S.D. Tex. 2005) (finding that employer's statement to plaintiff that "it was time to retire" is not direct evidence of age discrimination).

Edwards' sarcastic remark questioning whether Plaintiff's relevant experience (which in fact was ten to twenty years earlier) was relevant in light of the computerization of the Maintenance Department. This comment is not direct evidence of Edward's discriminatory intent based on Plaintiff's age in scoring Plaintiff's interview or age discrimination against Plaintiff in the ultimate promotion selection off the PER. To be probative on the issue of discriminatory intent, one must draw inferences from Plaintiff's evidence. Indeed, the reasonable inferences are debatable. Plaintiff's own witness explains that the statement was made in the context of Edwards' rational concern that Plaintiff's lengthy work experience, much of which occurred ten to twenty years earlier, might be obsolete. Plaintiff has not

shown direct evidence of discrimination but may rely on the traditional burden-shifting analysis as set forth by *McDonnell Douglas* and its progeny.

### C.  *Prima Facie* Showing

The Court next considers whether Plaintiff has raised a genuine issue of material fact as to any element of his *prima facie* case.  To establish a *prima facie* case of age discrimination based on a failure to promote, a plaintiff is required to prove: (1) he is within the protected class; (2) he was qualified for the position; (3) his application for promotion was rejected; and (4) another applicant outside the protected class was hired.[7]  *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680–81 (5th Cir. 2001); *see also Lindsey v. Prive Corp.*, 987 F.2d 324, 326–27 (5th Cir. 1993); *Moody v. U.S. Secretary of Army*, 72 Fed. Appx. 235, 238 (5th Cir. 2003).  "Under the ADEA, the protected class is limited to persons at least 40 years of age or older."  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 n.22 (5th Cir. 2005) (citing 29 U.S.C. § 631(a)).  The Supreme Court has stated that the ADEA prohibits age discrimination even among persons within the protected group.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  Therefore, a plaintiff in the protected class need only show that the defendant filled the position with a person younger than the plaintiff.

---

[7]     Defendant argues that the fourth element is that "others outside the protected class who are similarly situated were treated more favorably," citing *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 n.5 (5th Cir. 1997), and that Plaintiff cannot satisfy this element.  This general formulation of the *prima facie* Title VII elements has been clarified by more recent case law addressing promotion claims.  Under the more pertinent rubric, the analysis Defendant offers is addressed in the third step of the *McDonnell Douglas* burden-shifting process.

Plaintiff has presented evidence sufficient to establish each prong of a *prima facie* case of age discrimination.  First, it is undisputed that, at age fifty-nine, he was a member of the ADEA protected class at the time of the promotion decision.  *See Machinchick*, 398 F.3d at 352 n.22.  Second, Defendant does not dispute that Plaintiff was qualified for the Level 5 Position.  Third, it is uncontested that Defendant denied Plaintiff's application for the position.  Fourth, Plaintiff has shown that D'Souza, an applicant outside the protected class, was promoted to the Level 5 Position that Plaintiff sought.  Plaintiff has therefore met his burden on each element of his *prima facie* case of age discrimination, *see Medina*, 238 F.3d at 680–81, and thus Defendant has the burden to articulate a legitimate explanation for its promotion decision with respect to D'Souza.  *See Rachid*, 376 F.3d at 312.

### D.     Defendant's Legitimate, Non-Discriminatory Explanation

Defendant has offered a non-discriminatory reason for promoting D'Souza instead of Plaintiff.  Defendant claims D'Souza was the better qualified candidate because she possessed a superior composite rating on the written clerical abilities test and interview score.  Selecting the better of two qualified applicants is a legitimate, non-discriminatory explanation for a promotion decision.  *See Price v. Fed. Express Corp.*, 283 F.3d 715, 721 n.2 (5th Cir. 2002) (citing *Jefferies v. Harris County Cmty. Action Ass'n.*, 693 F.2d 589, 590 (5th Cir. 1982)).

### E.     Pretext Analysis

Because Defendant has articulated a legitimate, non-discriminatory reason for its decision, Plaintiff must establish that Defendant's explanation is untrue, or otherwise is a

pretext for discrimination.  *See Reeves*, 530 U.S. at 140; *Rachid*, 376 F.3d at 312.[8]  Plaintiff asserts that Defendant's stated non-discriminatory reason is pretextual because he was the best qualified candidate for the Level 5 Position, and thus the reason offered for preferring D'Souza is mere camouflage for Defendant's discriminatory animus.  Plaintiff also argues that pretext is shown by several procedural irregularities by Defendant in filling the two open positions.

    ***Relative Qualifications.***—Plaintiff can create a fact issue on pretext by providing evidence that he was "clearly better qualified" than D'Souza for the Level 5 Position.  *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356–57 (5th Cir. 2001); *Manning v. Chevron Chem. Corp.*, 332 F.3d 874, 882 (5th Cir. 2003) (internal citations omitted); *see also Reynolds v. Rumsfeld*, 127 Fed. Appx. 154, 155 (5th Cir. 2005).  "However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Celestine*, 266 F.3d at 357 (quoting *Deines v. Tex. Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)).[9]

---

[8]    Plaintiff could also avoid summary judgment under the "mixed-motive alternative" by showing that his age was one of two or more "motivating factors" for Defendant's decision.  *See Rachid*, 376 F.3d at 312.  The parties do not address a mixed-motive theory.

[9]    In a recent opinion, the Supreme Court recognized that evidence of superior qualifications may establish pretext "in some circumstances" and noted that several circuits have articulated (continued...)

Courts are not to engage in the practice of second-guessing employment decisions involving disputes concerning which promotion candidate is more qualified.  *See Scott v. Univ. of Miss.*, 148 F.3d 493, 509 (5th Cir. 1998) (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988)).  The Fifth Circuit teaches: "We do not sit as a super-personnel department that reexamines an entity's business decisions.  Even if evidence suggests that a decision was wrong, we will not substitute our judgment as to who was more qualified for the employer's business judgment."  *Id.* (internal citations and quotations omitted).

Before sitting for interviews, each of the applicants filled out a Knowledge, Skills, and Abilities form ("KSA form").  The KSA form is similar to a resumé; it provides the interview committee information on an applicant's education and work history.[10]  In addition, the KSA form sets out the critical elements of the Level 5 Position and allows applicants to explain their education and experiences pertinent to those critical elements.  The committee utilizes the completed KSA form as a framework for the interview.  It also is essential for an

---

[9]     (...continued)
        this standard as supporting an inference of pretext only where a plaintiff is "clearly superior" or "significantly better qualified" than the other candidate.  *Ash v. Tyson Foods, Inc.*, 126 S. Ct. 1195, 1197–98 (2006) (per curiam).  The court, however, declined to "define more precisely what standard should govern pretext claims based on superior qualifications."  *Id.* at 1198.  This Court will therefore continue to use the "clearly better qualified" standard set forth by the Fifth Circuit.  *See, e.g.*, *Celestine*, 266 F.3d at 357; *Manning*, 332 F.3d at 882.

[10]    Declaration of Henderson Raipe, III ("Raipe Affidavit"), Exhibit 4 to Motion, at 2.

"applicant to sell himself/herself at the interview and be able to connect prior experience with the requirements of the position."[11]

Plaintiff and D'Souza both scored a 76 on their clerical abilities test.  D'Souza was therefore awarded the Level 5 Position because she scored a 58.6 on her interview and KSA form, while Plaintiff only scored a 50 on that component.  Plaintiff contends that a comparison of his answers on the KSA form to D'Souza's establishes that, based on prior work experience, he was clearly better qualified for the Level 5 Position.  The Level 5 Position job description states:

> Performs a variety of data collection and processing tasks in support of scheduling, planning, control, and reporting for maintenance operations, completes requisitions, stores and issues supplies and tools.[12]

The KSA form indicates that the applicants were to be rated in ten different areas during the interview:  (1) knowledge of computer systems; (2) ability to work and deal with people; (3) ability to orally communicate; (4) ability to follow oral instructions; (5) ability to work without immediate supervision; (6) ability to operate programmed or programmable keyboard devices; (7) ability to work under pressure; (8) ability to read and understand graphs, charts, and/or tables; (9) ability to review incoming materials; and (10) ability to prepare maintenance work orders and schedules.[13]

---

[11]     *Id.*

[12]     Plaintiff's KSA form, Exhibit 7 to Response.

[13]     *Id.*

Plaintiff's and D'Souza's KSA forms[14] reveal these individuals each had certain strengths and weaknesses.  At the time he completed the KSA form, Plaintiff had approximately three years experience with the Postal Service starting in 2000.  Plaintiff also had served in the United States Army as a non-commissioned officer for almost sixteen years, from 1977 to 1992.[15]  Plaintiff also worked for a newspaper as a "page make up artist" from 1967 to 1974.  According to his KSA form, among other things, Plaintiff gained experience in the Army training and supervising subordinates, organizing and maintaining supplies, safety training, developing safety programs, communicating with people in the workplace, operating equipment, and accomplishing tasks under time constraints.  Notably, Plaintiff worked as a supply sergeant and was responsible for maintaining the operational status of equipment and vehicles for an entire field battalion.  The supply sergeant position appears to be similar in many respects to the Level 5 Position, but it is unclear how long or during what years Plaintiff worked in that capacity.[16]  Plaintiff is a high school graduate.  He also completed a four hour college computer course in 1997.

As of 2003, D'Souza had worked in the Postal Service for five years, having started in 1998.  Before that time, she worked as an accounts-receivable bookkeeper for seventeen

---

[14]     Plaintiff's KSA form, Exhibit 7 to Response; D'Souza's KSA form, Exhibit 8 to Response; *see also* Plaintiff's Interview Rating Sheet, Exhibit 10 to Response; D'Souza's Interview Rating Sheet, Exhibit 9 to Response.

[15]     It is unclear what jobs, if any, Plaintiff held in the eight years between 1992 and 2000.

[16]     Plaintiff did not disclose in his KSA form how long he worked in each job in the Army. However, it is noted that he received glowing comments from his superior officer in the Army concerning his performance as head of the "Battalion Readiness Center."  *See* Exhibit 7.

months, a travel agent for ten months, a daycare teacher for one month, and a secretary for approximately three years.  While working in these positions, D'Souza explained that she gained experience with computer software, data entry, communicating with people in the workplace, organizing inventory, operating electronic equipment, meeting deadlines, and safety training.  D'Souza attended college and earned a bachelor of arts degree, majoring in Office Management, Psychology, and Secretarial Practice.  While in school, she completed courses in algebra, geometry, trigonometry, and calculus.  Furthermore, D'Souza completed a computer training course and used computers in her job as a travel agent.[17]

Plaintiff and D'Souza each had experience and education that weighed in their favor. Plaintiff had more work experience in the Maintenance Department and in pertinent jobs in the Army.  He also had a longer work history overall.  On the other hand, D'Souza had completed college with a major particularly relevant to the Level 5 Position duties while Plaintiff had only one college-level course relevant to the position.[18]  D'Souza also had some relevant work experience using computers and dealing with the public.  Moreover, D'Souza's pre-Postal Service work experience, which spanned seven years from 1991 to 1998, was more recent than Plaintiff's Army experience, which ended in 1992.  Further, Plaintiff had eight years for which he identified no work experience, relevant or otherwise, that directly preceded his employment with the Postal Service.  D'Souza also had two years more

---

[17]    D'Souza's KSA form, Exhibit 8 to Response.

[18]    Plaintiff completed 36 quarter hours of welding and metaling at Kingwood College. Plaintiff's KSA form, Exhibit 7 to Response.  Plaintiff does not contend this training is relevant to his qualifications for the Level 5 Position.

experience than Plaintiff with the Postal Service.  While reasonable people might differ on the ratings the committee gave Plaintiff and D'Souza's KSA form responses and experience, the KSA forms indicate that both possessed many pertinent skill sets.  Thus, the KSA forms *per se* do not establish Plaintiff was clearly more qualified than D'Souza.

Even if the Court assumes Plaintiff had more extensive work experience, he fails to raise a genuine fact issue that Plaintiff was "clearly" more qualified than D'Souza when all the factors for the promotion are considered.  The committee indisputably relied on more than the written responses in the KSA forms to score the interviews.  The committee considered the oral skills of each candidate as revealed in the live interview.  As indicated in its instructions, the KSA form "provides [the applicant] an opportunity to outline . . . specific qualifications for postal maintenance jobs."[19]  The committee then used the applicant's answers in the KSA form to generate interview questions and talking points. During the interview, the applicant was to supplement the framework provided in the KSA form.[20]

The uncontroverted evidence is that Plaintiff did not perform well at his interview because he was unable to explain how his prior experience related to the Level 5 Position. Interview committee member Raipe states: "I went out of my way to ask [Plaintiff] questions to solicit a connection between his prior experience and the requirements of the position.

---

[19]     Plaintiff's KSA form, Exhibit 7 to Response.

[20]     Declaration of William B. Edwards ("Edwards Affidavit"), Exhibit 2 to Motion, at 3; Raipe Affidavit, at 2.

Even with this prompting, his answers were of marginal quality. . . . Both Ms. Ignacio and Ms. D'Souza were able to discuss the contents of their [KSA forms] better than [Plaintiff]."[21] Edwards, like Raipe, also noted Plaintiff's poor interview performance. Edwards maintains: "[Plaintiff] had difficulty communicating a connection between the training and work experience reflected on his [KSA form] to the skill set required by the position and he was ranked accordingly. . . . Although both Ms. Ignacio and Ms. D'Souza were new to the Maintenance Department, they were able to communicate their educational and work experience to the panel and connect that experience to the requirements of the position."[22] Plaintiff provides no contradictory evidence.

Plaintiff's has not raised a genuine dispute of material fact that he was "clearly better qualified" such that "no reasonable person, in the exercise of impartial judgment," could have chosen D'Souza over Plaintiff for the Level 5 Position. *See Celestine*, 266 F.3d at 357. Committee members Edwards and Raipe, both males over fifty years of age at the time of the promotion decision, together had forty-six years experience with the Postal Service. They both were very familiar with the requirements of the Level 5 Position, having served as first and second line supervisors for that job.[23] The Court may not substitute its own judgment for that of "the employer in evaluating what types of experience are most valuable for an employee in the absence of proof that the standards were not consistently applied or

---

[21]    Raipe Affidavit, at 2–3.

[22]    Edwards Affidavit, at 4.

[23]    *See* Edwards Affidavit, at 1; Raipe Affidavit, at 2.

were so irrational or idiosyncratic as to suggest a cover-up." *See EEOC v. La. Office of Comm'n Serv.*, 47 F.3d 1438, 1445–46 (5th Cir. 1995) (internal citations omitted). Deference to the employer's decisions is appropriate because the ADEA does not protect "older workers from erroneous, or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *See Bienkowski*, 851 F.2d at 1508.  It is immaterial whether the promotion decision was wrong or based on incorrect facts, so long as the decision was not motivated by discriminatory animus. *See Scott*, 148 F.3d at 509. Plaintiff thus fails to establish pretext through his contention that he was more qualified than D'Souza for the Level 5 Position.

***Alleged Procedural Irregularities.***—Plaintiff also alleges that irregularities in the hiring process suggest Defendant's decision to promote D'Souza was pretextual.  First, Plaintiff contends he should have been promoted when he was placed on the PER in August 2003 when, at the time, there were two vacant Level 5 Positions.  One of the Level 5 Positions had been open since September 1999.  The Postal Service did not fill that position, despite numerous requests from the Union, because the manager of the North Houston Facility, John Guillory, did not believe the position was necessary.[24]  A second Level 5 Position became vacant on August 22, 2003.  At that time, Guillory decided to fill both positions, and restructure the Maintenance Department to provide coverage in the Level 5 Position twenty-four hours a day, seven days per week.  Although Plaintiff was qualified and was the only person on the PER at that time, Guillory states he did not promote Plaintiff

---

[24]     Declaration of John C. Guillory ("Guillory Affidavit"), Exhibit 1 to Motion, at 4–5.

because D'Souza and Ignacio were in the process of qualifying for the Level 5 Position.[25]
Plaintiff characterizes this sequence of events as "procedural irregularities [that] suggest that
the Post Office was attempting to prevent [him] from obtaining the position."[26]  Plaintiff also
asserts that the delay in filling the Level 5 Position vacancies violated the CBA.

These alleged irregularities are not probative evidence of pretext for age
discrimination.   Plaintiff presents no evidence that Guillory's explanations are false.
Moreover, Guillory supplies rational business explanations for his decisions.  Guillory had
delayed filling the Level 5 Position from 1999 on, several years before Plaintiff qualified for
the position.   Guillory's business decision not to fill that vacancy was based on staffing
needs and had nothing to do with Plaintiff until at least August 2003, when Plaintiff was
placed on the PER.   Further, whether or not Guillory's decision to hold the positions vacant
in August 2003 violated the CBA is irrelevant to Plaintiff's discrimination claim.   Moreover,
Guillory left his management position at the North Houston Facility in November 2003, and
had no input with the promotion decision at issue here.[27]   There is simply no evidence that
Guillory's decisions relating to the vacant Level 5 Positions were motivated by
discriminatory animus.

---

[25]     *Id.*, at 5.

[26]     Response, at 4.

[27]     Guillory Affidavit, at 5–6.  It is also noted that when Plaintiff was passed over for promotion,
he was 59 years old and Guillory was 56 years old.

As further evidence of pretext, Plaintiff alleges a procedural irregularity in a "difference in treatment with regard to the requirement that applicants obtain medical clearance" for the Level 5 Position.[28]  Applicants must obtain medical clearance to qualify for the Level 5 Position.  If information in an applicant's medical record "is too old for evaluation, the applicant is sent a form to self-report any physical limitations.[29]  D'Souza self-reported her medical fitness.[30]  Plaintiff maintains that he was not permitted to self-report, but instead he was required to secure a statement from a physician verifying his medical fitness.[31]  Both Plaintiff and D'Souza were found physically fit for the promotion. Plaintiff's allegations are unspecific and vague.[32]  Plaintiff does not identify who required him to obtain a physician's medical clearance.  Nor does he identify the person who permitted D'Souza to self-report.[33]  Therefore, Plaintiff presents no probative theory of disparate treatment or pretext.  *See Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998) (vague allegations of discrimination are insufficient to survive summary judgment).

---

[28]     Response, at 17.

[29]     Edwards Affidavit, at 2.

[30]     D'Souza's Medical Clearance Form, Exhibit 14 to Response.

[31]     Declaration of Joseph Sinclair, Exhibit 1 to Motion, ¶ 5.

[32]     It is unclear why this difference in treatment is even relevant.  Plaintiff does not contend he was wrongfully ruled medically unfit.

[33]     It is unclear from the record who made the decisions with respect to the medical clearance requirement, what, if any, reasons were given him for this requirement, or when the decision that Plaintiff needed a doctor's note/evaluation was made.

*Age-Related Comment.*—Finally, Plaintiff relies on Edwards' comment made during Plaintiff's grievance hearing as proof of pretext. Edwards, after a sarcastic comment about which century Plaintiff's Army work was in, questioned whether Plaintiff's pre-Postal Service work experience occurred too long ago to be relevant in this age of strong reliance on computers. Discriminatory comments can serve as competent evidence of pretext in some circumstances. *See Russell*, 235 F.3d at 225 n.9. However, the Fifth Circuit has explained that where, as in this case, there is no other evidence of pretext aside from an allegedly discriminatory comment, "it is appropriate to analyze such comments as direct evidence of discrimination, apart from the *McDonnell Douglas* framework." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 404 n.7 (5th Cir. 2001). As discussed above, Edwards' remark does not amount to direct evidence of discrimination. Consequently, the remark by itself does not establish pretext. *See id.* Plaintiff has failed to establish a genuine fact issue on pretext.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADEA discrimination claim.

## IV.    CONCLUSION

Plaintiff has failed to show that Defendant's articulated legitimate, non-discriminatory reason for Plaintiff's non-promotion was false or otherwise a pretext for age discrimination. For the reasons discussed above, Defendant is entitled to summary judgment dismissing each claim in Plaintiff's Original Complaint. Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment [Doc. # 25] filed by Defendant

John E. Potter, Postmaster General of the United States of America, is **GRANTED**.

A final judgment will be entered separately.

SIGNED at Houston, Texas, this **23rd** day of **March 2006**.

Nancy F. Atlas
United States District Judge